**Simon Sylvester HAYDEN, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

March 14, 1978.

Jack Emory Farley, Public Defender, M. Marie Allison, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

Simon Sylvester Hayden, Jr., the appellant, was indicted for killing Shirley Yates and for killing and robbing Truong Huy Do. The crimes occurred on or about November 15, 1976. Hayden at this time was 15 years old. The juvenile court transferred the case to circuit court where Hayden was tried as an adult. The jury convicted him of two counts of first-degree manslaughter and one count of first-degree robbery. KRS 507.030 and 515.020. The jury fixed his punishment at 15-years' imprisonment on each of the two first-degree manslaughter convictions and 10-years' imprisonment on the robbery conviction. The trial judge entered judgment in accordance with the jury verdict and provided that the sentences were to be served consecutively. Hayden appeals.

We reverse for a new trial because Hayden was denied due process as interpreted by the United States Supreme Court when the trial judge failed to hold an evidentiary hearing to determine whether Hayden was mentally competent to stand trial.

Hayden was tried in February 1977. On January 26, 1977, his attorney notified the trial judge that he (the attorney) doubted "the present fitness of the defendant to proceed or to participate rationally in his own defense upon the charges brought against him under this Indictment." The trial judge ordered a "mental examination upon the defendant, Simon Sylvester Hayden, Jr., for the purpose of determining whether said defendant's mental condition and the existence of any mental disease or defect would effect (sic) said defendant's competency to stand trial . . .." Pursuant to this order, Hayden was sent to Green River Comprehensive Care Center for evaluation of his mental condition.

At Green River Center, Hayden was examined by a clinical psychologist and later by a psychiatrist. The psychologist found that " . . . the evidence supports a schizophrenia of fairly long standing which is exacerbated by recent stress situations." He expressed no opinion on Hayden's competence to stand trial. The psychiatrist reported that, in his opinion, Hayden was a "Schizoid personality" who "probably decompensated into a psychotic episode when under stress."

The psychiatrist made the following report concerning Hayden's competence to stand trial:

" . . . In addition at this point in time, it is my feeling that he probably could assist his attorney in the preparation of his defense and therefore probably is competent to stand trial although due to his dullness and looseness of associations, one would have to be very concrete with him using extremely simple phrases and ideas."

KRS 504.040(1) provides:

"No person who as a result of mental disease or defect, lacks capacity to appreciate the nature and consequences of the proceedings against him or to participate rationally in his defense shall be tried, convicted or sentenced for the commission of an offense, so long as such incapacity endures."

RCr 8.06 states:

"If upon arraignment or during the proceedings there are reasonable grounds to believe that the defendant is insane, the proceedings shall be postponed and the issue of sanity determined as provided by law."

It appears that KRS 504.040(1) delineates the criterion for determining whether a defendant is "insane" as that word is used in RCR 8.06. The commentary to the Kentucky Penal Code of which KRS 504.040 is a part explains:

"This section [KRS 504.040] adopts the accepted criterion for determining whether a defendant is mentally able to proceed. The criterion that is used here is different from that of KRS 504.020 [mental disease or defect] since the two provisions serve substantially different purposes. This section has significance only as of the time of the proceedings against an offender, therefore, it is framed in terms of his capacity to appreciate the nature of the proceedings and to participate rationally in his own defense. If an

alleged offender's mental state does not meet this minimum standard, this section prohibits trial, conviction or sentence."

According to the report of the psychiatrist, Hayden could not define the function of a jury and did not know what it was. He said the function of the judge was to set bond and pass sentence and to give a subpoena. The psychiatrist meaningfully qualified his opinion that Hayden probably could assist his attorney by recommending that "one would have to be very concrete with him using extremely simple phrases and ideas." We have read Hayden's testimony at his trial. It illustrates the reason for the psychiatrist's recommendation.

■ The conviction of an accused person while he is legally incompetent violates due process and state procedures must be adequate to protect this right. *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

In the case before us, Hayden's attorney expressed doubt concerning the competence of his client to stand trial based on his interviews and conferences with him. The psychiatrist would only qualify Hayden to participate in a trial procedure that would be "very concrete" and where only "extremely" simple phrases and "ideas" would be used. In our opinion, such procedure could hardly be characterized as a "due process trial" for criminal conduct. Cf. *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Hayden's testimony at the trial fails to inject evidence sufficient to overcome the previous reasonable doubt we find to exist concerning his mental competency to stand trial determined by the criterion expressed in KRS 504.040(1). We therefore hold that the trial judge erred when he failed to conduct an evidentiary hearing concerning Hayden's mental competence to stand trial as mandated by RCr 8.06.

■ We reject Hayden's other assertions of error. His contention that he was entitled to a directed verdict of acquittal on his exculpation defense of insanity at the time of the commission of the offenses is without

merit. The criterion to be applied is specified in KRS 504.020. In order to exculpate the criminal conduct he was required to establish that at the time of the commission of the offenses he suffered from a mental disease or defect that caused him to lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. His evidence in this respect was not so compelling as to require a finding in his favor by the court as a matter of law. Therefore, the issue was properly submitted to jury for its determination. Cf. *Henderson v. Commonwealth,* Ky., 507 S.W.2d 454 (1974).

■ Hayden argues that his confession to the police should not have been admitted in evidence because *Miranda* was violated, and the confession was involuntary. All of the evidence heard by the trial judge on the admissibility of the confession was produced by the prosecution. The prosecution's proof established careful compliance with the *Miranda* requirements by the authorities. It also explained in detail the police conduct in securing the confession. " . . . Most courts hold that a minor may waive his rights and confess without first seeing a lawyer or his parents, although waiver may be more difficult to prove because of the suspect's age. See cases collected in *1974 Model Code* at 155 fn. 4." Kamisar, LaFave, and Israel, Model Criminal Procedure, 590 (4th ed. 1974). The trial judge found the confession to be voluntary. We cannot call his finding clearly erroneous. *Allee v. Commonwealth,* Ky., 454 S.W.2d 336 (1970) requires us to reject this assertion of error.

■ Hayden's final contention is that jurisdiction of the juvenile court was invalidly waived and he was improperly transferred to circuit court to be tried as an adult. The juvenile proceedings and the transfer were in accordance with the standards recently announced. Hayden's constitutional rights in this aspect of the case were fully afforded him. See *Sharp v. Commonwealth,* Ky., 559 S.W.2d 727 (1977).

In view of our conclusions, what then shall be the disposition of this appeal? We

are frank to say that if we were writing on a clean slate we would adopt the procedure used by the United States Supreme Court in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), where the case was remanded to the trial court for a separate hearing on the voluntariness of the defendant's confession with provision that if the confession was found to be involuntary he would be awarded a new trial with the confession suppressed, but if the confession was found to be voluntary the judgment of conviction would remain undisturbed.

*Pate v. Robinson,* supra, however rejected this resolution where the issue was the defendant's mental competence to stand trial. The court noted "the difficulty of retrospectively determining an accused's competence to stand trial." The court noted that the hearing would be held six years after the fact. It was therefore directed that if the state elected to retry the defendant, it was open to him to raise the question of his competence to stand trial at that time and to request a special hearing thereon. "In the event a sufficient doubt exists as to his present competence such a hearing must be held. If found competent to stand trial, Robinson [the defendant] would have the usual defenses available to an accused." *Pate v. Robinson,* 86 S.Ct. 836, 843 (1966).

In *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the unanimous opinion stated:

"The question remains whether petitioner's due process rights would be adequately protected by remanding the case now for a psychiatric examination aimed at establishing whether petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances, (citations omitted) we cannot conclude that such a procedure would be adequate here. (Citation omitted). The State is free to retry petitioner, assuming, of course, that at the time of such trial he is competent to be tried."

Although some of the difficulties in *Robinson,* supra, and *Drope,* supra, are absent in this case, and the opportunity for concurrent determination is much greater, nevertheless, the Supreme Court before the decisions in *Robinson* and *Drope* had declared in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960):

"In view of the doubts and ambiguities regarding the legal significance of the psychiatric testimony in this case and the resulting difficulties of retrospectively determining the petitioner's competency as of more than a year ago, we reverse the judgment of the Court of Appeals affirming the judgment of conviction, and remand the case to the District Court for a new hearing to ascertain petitioner's present competency to stand trial, and for a new trial if petitioner is found competent. It is so ordered."

See also *Via v. Commonwealth,* Ky., 522 S.W.2d 848 (1975).

Thus we are compelled to reverse the judgment of conviction and remand the case to the circuit court for an evidentiary hearing and determination of Hayden's present mental competence to stand trial. If Hayden is found mentally competent he may be tried again, if he is found incompetent to stand trial, he shall be dealt with as provided in KRS 504.040(2).

The judgment is reversed for further proceedings consistent with this opinion.

All concur.